

# ᑕᒪOSED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LEON WHEELER,

      Petitioner,

v.

KURT JONES,

      Respondent,

_____/

Civil No. 98-CV-74928-DT
HONORABLE DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING PETITION
## FOR WRIT OF HABEAS CORPUS

Leon Wheeler, ("petitioner"), presently confined at the Carson City Correctional Facility in Carson City, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by retained counsel Elizabeth L. Jacobs, petitioner challenges his conviction and sentence on one count of second degree murder, M.C.L.A. 750.317; M.S.A. 28.549, and one count of possession of a firearm in the commission of a felony, M.C.L.A. 750.227b; M.S.A. 28.424 (2). For the reasons stated below, petitioner's application for writ of habeas corpus is **DENIED**.

## I.  BACKGROUND

Petitioner's convictions arose out of the shooting death of his girlfriend Sonya Davis in Detroit, Michigan on December 6, 1991.

The victim's sister Tanya Davis was the main witness for the prosecution. She shared an apartment with the victim on LaSalle Street in Detroit, Michigan. Tanya Davis had known petitioner for ten years and indicated that his nickname was "Jun". Prior to December 6, 1991, the victim and petitioner had been dating. Tanya Davis believed that

the two had broken up prior to the date in question, although she had no personal knowledge of this fact. Tanya Davis acknowledged that she did not like petitioner.

Tanya Davis indicated that petitioner had been at the apartment at two or three o'clock on the afternoon of the murder. Petitioner and the victim went into the bedroom and talked. Afterwards, the victim appeared nervous to her sister.

At ten o'clock that evening, the phone rang and the victim answered it. Some three seconds after hanging up the phone, the victim told Tanya Davis: "That was Jun. He's on his way over". The victim sounded "shaky and nervous" to Tanya Davis after getting off of the phone.

Anywhere from two to twenty minutes later, Tanya Davis heard a car horn honking outside. Tanya Davis said that the horn sounded like petitioner's car horn because he blew his car horn in the same pattern every time that he came over to the apartment. The victim said: "That's Jun" and went downstairs.

Tanya Davis was still inside of the apartment when she heard a loud noise. She looked out the window and observed petitioner walking towards his car. As petitioner walked towards his car, he placed an object into his pocket. Tanya Davis was twenty to twenty five feet away when she observed this. Although it was dark outside, the area was well lit from the building and nothing obstructed her view. Although she was unable to see the person's face, she identified the man as being petitioner from his limp, from the car he was driving, and from knowing petitioner for ten years.

Davis acknowledged that she initially identified petitioner's car as being a Cadillac and later identified it as being a Buick Rivera. She was also impeached by her preliminary

2

examination testimony, where she had indicated that it had been dark outside. She further acknowledged that she could not tell whether the person was a man or woman but thought that it was a man because of the jeans that he was wearing.

When Davis heard the noise, she immediately jumped up because she thought that petitioner and the victim had been fighting. Tanya Davis came out of her apartment and discovered the victim's body lying on the ground with blood flowing from the head.

At the close of Tanya Davis' testimony, a juror handed the trial court a note with a question that he wished to have asked of the witness. The trial court asked whether Davis had seen the victim and petitioner fighting. Tanya Davis had seen marks on her sister's arms before but acknowledged that she had never really seen them fight. Upon followup questions from the trial court, Davis admitted that she had seen petitioner and the victim fight on two occasions. On re-cross examination by defense counsel, Davis indicated that the victim called the police on one occasion after petitioner had broken down the door.

Petitioner presented an alibi defense at trial. Petitioner and Russell Perkins, a life long friend of his, both testified that petitioner and Perkins were drinking beer at Perkins's house in Inkster at the time of the shooting. Petitioner also denied ever fighting with the victim and also denied walking with a limp. Petitioner acknowledged that a Cadillac El Dorado looked similar to his Buick Rivera.

The prosecutor called Beretta Berryhill, the victim's aunt, as a rebuttal witness. She testified that she had known petitioner for five or six years and that he walked with a limp.

After petitioner was convicted, his family hired an attorney to represent him on appeal. This attorney, however, never filed petitioner's appeal by right or an application

3

for leave to appeal.  Petitioner thereafter filed a motion for relief from judgment with the

Detroit Recorder's Court.  Judge Wendy M. Baxter denied the motion. *People v. Wheeler*,

Detroit Recorder's Court # 92-003026, Order Dated December 4, 1996.  The Michigan

Court of Appeals and Michigan Supreme Court denied leave to appeal. *People v. Wheeler*,

200081 (Mich.Ct.App. July 1, 1997); *lv. den.* 457 Mich. 875 (1998).  Further facts will be

brought out in the discussion of the individual claims.  Petitioner now seeks the issuance

of a writ of habeas corpus on the following grounds:

    I.  THE ADMISSION OF THE OUT-OF-COURT STATEMENTS OF THE DECEASED WHICH IDENTIFIED MR. WHEELER AS THE PHONE CALLER, AS THE PERSON WHO HONKED, AND WHICH INDICATED THAT SHE AND PETITIONER HAD BROKEN UP DENIED HIM THE RIGHT TO CONFRONT AND CROSS EXAMINE THE WITNESSES AGAINST HIM.

    II.  LEON WHEELER WAS DENIED DUE PROCESS OF LAW AND THE RIGHT TO AN IMPARTIAL JURY WHEN THE TRIAL JUDGE ABUSED HIS DISCRETION BY ASKING THE QUESTION PROPOUNDED BY THE JUROR AND THEN ASKING HIS OWN FOLLOW-UP QUESTIONS WHERE THESE QUESTIONS ELICITED SPECULATIVE, PREJUDICIAL AND INADMISSIBLE INFORMATION.

    III. PROSECUTORIAL MISCONDUCT DURING ARGUMENT AND CROSS-EXAMINATION OF PETITIONER DENIED PETITIONER DUE PROCESS OF LAW, THE RIGHT TO COUNSEL, AND THE RIGHT TO CONFRONT WITNESSES.

    IV. THE TRIAL JUDGE ABUSED HIS DISCRETION WHEN HE ADMITTED AN IRRELEVANT PHOTOGRAPH DEPICTING BLOOD OVER THE OBJECTION OF THE DEFENSE.

    V.  PETITIONER'S CONVICTION FOR SECOND DEGREE MURDER SHOULD BE REVERSED AS THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT.

    VI.  LEON WHEELER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO PROSECUTORIAL MISCONDUCT AND TO THE JUROR'S QUESTION

4

CALLING FOR EVIDENCE WHOSE PROBATIVE VALUE WAS SUBSTANTIALLY OUTWEIGHED BY ITS PREJUDICIAL EFFECT.

## II.  STANDARD OF REVIEW

28 U.S.C. §2254(d) provides:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); *Harpster v. State of Ohio*, 128 F. 3d 322, 326 (6th Cir. 1997).

The Sixth Circuit has indicated that the deference to the state courts' judgments required under the Antiterrorism and Effective Death Penalty Act ("AEDPA") would be achieved by adopting the rule that the unreasonableness of a state court's application of clearly established Supreme Court precedent will not be debatable among reasonable jurists if it is so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes. *See Tucker v. Prelesnik*, 181 F. 3d 747, 753 (6th Cir. 1999).

## III.  DISCUSSION

A.     **Claim # 1. Admission of the deceased's statements did not violate the Sixth Amendment Confrontation Clause.**

In his first claim, petitioner contends that his right to confrontation was violated

5

when the trial court permitted Tanya Davis to testify that after getting off of the phone, the victim had indicated that petitioner had been the one who called. Tanya Davis also testified that the victim had said "That's Jun" when she heard the car horn honking. The trial court permitted these statements to be admitted under the present sense impression exception to the hearsay rule.

The Sixth Amendment protections are not so broad as to exclude the admission of certain hearsay statements against the accused despite his or her inability to confront the declarant at trial. Certain types of hearsay are admissible if the declarant is unavailable and the statement bears adequate indicia of reliability. *Bruton v. Phillips*, 64 F. Supp. 2d 669, 678 (E.D. Mich. 1999)(Gadola, J.). The Confrontation Clause does not require that no hearsay evidence be introduced against a criminal defendant. *Dutton v. Evans*, 400 U.S. 74, 80 (1970).

The veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when:

> 1. the evidence falls within a firmly rooted exception to the hearsay rule; or
> 2. it contains particularized guarantees of trustworthiness such that adversarial testing would be expected to add little, if anything, to the statement's reliability.

*Lilly v. Virginia*, 119 S. Ct. 1887, 1894 (1999); *See also Ohio v. Roberts*, 448 U.S. 56, 66 (1980).

Petitioner first contends that the victim's out-of-court statements should not have been admitted because they do not even qualify as present sense impressions. There are three principal requirements which must be met before hearsay evidence may be admitted as a present sense impression:

6

1. the declarant must have personally perceived the event described;
2. the declaration must be an explanation or description of the event, rather than a narration;
3. the declaration and the event must be contemporaneous.

*United States v. Santos*, 65 F. Supp. 2d 802, 822 (N.D. Ill. 1999).

In *United States v. Earley*, 657 F. 2d 195, 197-198 (8th Cir. 1981), the Eighth Circuit held that the trial court did not abuse its discretion in admitting under the present sense impression exception testimony regarding a murder victim's statement: "Oh, mom, what am I going to do? That sounded just like Butch". The Court noted that the statement was made after the victim received a phone call while she was with the witness, the phone call upset the victim, and the victim made the statement to her mother immediately after hanging up the phone. *Id.* *See also United States v. Peacock,* 654 F. 2d 339, 350 (5th Cir. 1981)(testimony about comments made by unavailable witness following telephone conversation admissible under present sense impression).

The victim's two statements to Tanya Davis, after receiving the phone call on the night in question, and after hearing the car horn blow outside, clearly qualified as present sense impressions. The victim personally perceived the events she described, her statements were a description of each event rather than a narration, and the declarations were contemporaneous with the events.

The question remains whether statements which are admitted under the present sense impression exception violate the Sixth Amendment Confrontation Clause. The U.S. Supreme Court has yet to recognize the present sense impression exception as a "firmly rooted exception" to the hearsay rule. *See People of the Territory of Guam v. Ignacio*, 10 F. 3d 608, 614 (9th Cir. 1993). However, other federal courts have recognized, either

7

implicitly or explicitly, that the present sense impression exception is a firmly rooted exception to the hearsay rule for Confrontation Clause purposes. The Ninth Circuit, in an unpublished opinion, has recognized "the present sense impression exception to the hearsay rule as 'an ancient and well-established doctrine' which falls within a firmly rooted hearsay exception". *United States v. Vega*, 883 F. 2d 1025, 1989 WL 95475 (9th Cir. August 16, 1989). Similarly, the Fifth Circuit in *Peacock* indicated that it could infer the reliability of certain declarations, including the statements admitted under the present sense impression exception, because all of the declarations fell within a firmly rooted hearsay exception. *United States v. Peacock*, 654 F. 2d at 349-350. In *Brown v. Tard*, 552 F. Supp. 1341, 1351 (D.N.J. 1982), the federal district court ruled that under *Ohio v. Roberts*, reliability for Confrontation Clause purposes may be inferred where testimony falls within the present sense impression to the hearsay rule.

This Court concludes that the present sense impression exception to the hearsay rule is considered a firmly rooted exception to the hearsay rule. The admission of statements under this exception would not violate the Sixth Amendment Confrontation Clause. Moreover, even if the present sense impression exception is not a firmly rooted exception to the hearsay rule, admission of the two out of court statements made by the victim to her sister were admissible because they contained particularized guarantees of trustworthiness. Hearsay evidence admitted under the Confrontation Clause's "particularized guarantees of trustworthiness" requirement must be so trustworthy that cross-examination of the declarant would be of marginal utility. *Idaho v. Wright*, 497 U.S. 805, 819-820 (1990). In the present case, the declarant's two out of court statements

8

involved her identifying petitioner as the person who called her on the phone and who later was the person honking his horn outside of the house. In light of the fact that the declarant had been petitioner's long time girlfriend, her identification of petitioner was reliable. Morever, petitioner has failed to offer any reasons why the declarant would falsely or incorrectly identify petitioner as being the person who called her on the phone or came over to her house. This Court concludes that cross-examination of the victim would have been of marginal utility in light of her long standing relationship with petitioner.

Petitioner also complains that Tanya Davis was allowed to testify that her sister told her that she and petitioner had broken up prior to the night of the shooting. However, petitioner admits that the trial court instructed the jury that they could not consider this as evidence that the victim and petitioner had broken up, but could only consider it because it showed why Tanya Davis thought that the two had broken up. Because the trial court did not admit this evidence as substantive evidence and gave a cautionary instruction to the jury, admission of this statement did not deprive petitioner of a fair trial. Moreover, because motive is not an element of the crime of murder in Michigan, *Spalla v. Foltz*, 615 F. Supp. 224, 229 (E.D. Mich. 1985)(Cohn, J.)(citing to *People v. Cipriano*, 238 Mich. 332, 335; 213 N. W. 104 (1927)), admission of this testimony was harmless because it only went to the possible motive for the shooting and not to the actual elements of the offense.

Petitioner's first claim fails to state a claim upon which habeas relief can be granted.

**B.      Claim # 2.  Petitioner's constitutional rights were not violated when the trial court asked Tanya Davis a question propounded by a juror and asked follow up questions.**

Petitioner next claims that his constitutional rights were violated when the trial court permitted the jury to submit its own questions to the witnesses and then asked its own follow-up questions.

At the start of trial, the trial court informed the jury that they could ask questions of the jury if they wanted to.  The trial court indicated that if they wished to so so, they were to write the question down, submit it to the court, and then the court would decide if the question was permissible under the rules of evidence. [1]  Defense counsel did not object to this procedure.

After Tanya Davis testified, a juror submitted the following question: "What had the relationship between the deceased and the defendant been?  Miss Davis thought her sister and the defendant may have been fighting when she heard loud noises.  Had she seen them fighting anytime?" [2]  The trial court proceeded to ask Davis whether she had ever seen petitioner and the victim fighting.  When she said that she had, the trial court followed that question up by asking when was the last time that she had seen the two fight.  The court also asked her to be specific about what she meant by fighting.  Davis indicated that petitioner would hit the victim and rip her clothes off.  However, when the trial court asked her how often she saw them fight, Davis admitted that she never actually

---

[1] Trial Transcript Volume One, Hereinafter "TI", pp. 206-207.

[2] Petitioner's Exhibit 2a.

10

saw them fight, but had merely seen marks on the victim's arm. The victim then changed her answer and indicated that she had seen the victim and petitioner fight on two occasions. The trial court then asked when was the most recent time that she had seen them fight. Davis replied that she had seen them fight a month prior to the shooting. After the trial court finished questioning Davis, defense counsel was allowed to re-cross examine Davis. [3] Petitioner now claims that the trial court erred by submitting the juror's question to Davis without allowing petitioner's counsel to see it and also impermissibly interjected himself into the trial by asking follow-up questions of the jurors.

This Court notes that neither petitioner's counsel nor respondent's counsel have cited any habeas cases which deal specifically with the issue of a trial court allowing jurors to submit questions to witnesses in a criminal case. In reviewing a general allegation of judicial misconduct in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F. 3d 734, 740 (9th Cir. 1995). To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being more than an impartial observer. *Brinlee v. Crisp*, 608 F. 2d 839, 852-853 (10th Cir. 1979); *See also Hines v. Redman*, 805 F. 2d 1034, 1986 WL 18068, * 2 (6th Cir. October 30, 1986). A trial judge's intervention in the conduct of a criminal trial would have to reach a

---

[3] Trial Transcript Two, hereinafter "TII", pp. 37-41.

11

significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F. 2d 811, 818 (6th Cir. 1985). In evaluating potential prejudice of a trial court's comments, the comments should not be reviewed in isolation, but in the context of the whole trial. *Bell v. Evatt*, 72 F. 3d 421, 434 (4th Cir. 1995).

Petitioner cites to numerous federal criminal cases that criticize the practice of allowing jurors to ask witnesses questions. None of these cases, however, would support petitioner's claim for relief. Although many federal courts have expressed concern over the dangers of allowing jurors to ask questions, federal courts have refused to adopt a rule in federal court prohibiting the questioning of witnesses by jurors during the course of a criminal trial. *United States v. Hernandez*, 176 F. 3d 719, 723 (3rd Cir. 1999)(citations omitted). There is no *per se* rule in the federal system which bans jurors from questioning witnesses, and the questioning of witnesses is within the judge's discretion; however, direct juror questioning of witnesses is strongly discouraged. *United States v. Bush*, 47 F. 3d 511, 514-515 (2nd Cir. 1995)(citations omitted). At least one judge of this district has allowed jurors to ask questions of witnesses during the course of a criminal trial. *See United States v. Weiner*, 755 F. Supp. 748, 756 (E.D. Mich. 1991)(Feikens, J.).

Petitioner first objects to the fact that the trial court submitted the juror's question to Tanya Davis without first reviewing it with counsel for potential evidentiary problems. However, at the start of the trial, the trial court indicated that it would allow jurors to submit questions in writing, would review them himself, and if the court found no evidentiary problems with the question, would submit it to the witness. Defense counsel never

objected to this procedure nor requested that he be permitted to review the questions with the trial court prior to their submission to the witness. In *United States v. Sutton*, 970 F. 2d 1001, 1006 (1st Cir. 1992), the First Circuit refused to reverse a conviction based upon juror questioning of witnesses because although the trial court announced during the precharge that it would permit juror-inspired questions, the defendant neither objected nor requested additional safeguards. The First Circuit concluded that by failing to do so, the defendant acquiesced to the process. *Id.*

Moreover, the question propounded by the juror to Tanya Davis was not unduly prejudicial. In response to Davis' testimony that she thought that petitioner and the victim were fighting when she heard the loud noise, the juror wanted to know if she had ever seen the two fight. Because this question gave no indication as to the jurors' opinion regarding either the credibility of the witnesses or their belief in petitioner's guilt or innocence, there is no basis to believe that, absent the juror's question, the jury would have reached a different conclusion regarding petitioner's guilt. *United States v. Feinberg*, 89 F. 3d 333, 338 (7th Cir. 1996).

Petitioner also claims that the trial court asked impermissible follow-up questions to the juror's initial question. Once a juror inspired question is passed on to a witness, a judge may ask proper follow-up questions of his or her own volition. *United States v. Sutton*, 970 F. 2d at 1006, fn. 4. In a criminal case, a trial court has the power to elicit the truth by an examination of the witnesses. *Glasser v. United States*, 315 U.S. 60, 82 (1942). A judge's questioning of witnesses to clarify evidence for the jury is an appropriate exercise of judicial discretion despite the fact that the questions may have

13

permitted a witness to emphasize testimony helpful to the prosecutor or elicited answers detrimental to the defense. *Duckett v. Godinez,* 67 F. 3d at 740.

In the present case, the trial court's follow-up questions to Tanya Davis were brief and were intended to get Davis to clarify what she meant by seeing petitioner and the victim fight. The trial court's questions, in fact, got Davis to admit that she had only seen them fight twice. Moreover, even if the trial court's brief questions elicited testimony favorable to the prosecution and harmful to petitioner, that alone would not be grounds for habeas relief. The trial court's brief follow-up questions would not lead an impartial observer to believe that the judge assumed an attitude which went further than an expression of his personal opinion and impressed the jury as being more than an impartial observer. As such, petitioner has failed to demonstrate that he is entitled to habeas relief on this claim.

## C.   Claim # 3.   Petitioner was not deprived of a fair trial by prosecutorial misconduct.

Petitioner next alleges numerous instances of prosecutorial misconduct.

### 1.   Standard of Review.

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections,* 4 F. 3d 1348, 1355-1356 (6th Cir. 1993); *cert. denied sub nom Serra v. Toombs,* 510 U.S. 1201 (1994). A criminal conviction is not

14

to be lightly overturned on the basis of a prosecutor's comments standing alone, for a prosecutor's statements or conduct must be viewed in context and only in doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial. *See United States v. Young,* 470 U.S. 1, 11( 1985). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused. *Serra v. Michigan Department of Corrections,* 4 F. 3d at 1355-1356.

2.      **Specific Instances of Misconduct.**

a.      **The prosecutor erred in telling the jurors to do their duty or do the right thing.**

Petitioner first alleges that the prosecutor made impermissible arguments by asking the jurors to do the "right thing" in opening argument [4], telling the jurors to do their duty in his closing argument [5], and telling the jurors in rebuttal argument that "The People believe that the only injustice would be if you do not do your job". [6]

It is improper for a prosecutor to state that the duty of the jury is to find the defendant guilty. *United States v. Sanchez,* 176 F. 3d 1214, 1224 (9th Cir. 1999).

---

[4] TI, p. 217.

[5] TII, p. 105.

[6] TII, p. 122.

15

However, it is probably appropriate for a prosecutor to argue to the jury that if they find every element of the crime proven beyond a reasonable doubt, their duty is to convict. *Id.* at 1225. In *Sanchez*, the Ninth Circuit found that the prosecutor committed misconduct because the prosecutor did not tell the jury that they had a duty to find the defendant guilty only if every element of the crime had been proven beyond a reasonable doubt, nor did it remind them that it had a duty to acquit the defendant if it had a reasonable doubt as to his guilt. *Id.*

The prosecutor's comments in the present case are distinguishable from the comments found objectionable in *Sanchez*. In his opening argument, the prosecutor preceded his comment about doing the right thing by asking the jury to "listen to the facts". The prosecutor also reminded the jury that he had the burden of proof. In his closing argument, prior to telling the jury to "do their duty", the prosecutor advised the jury again that the burden of proof was entirely his and "If I have not met that burden I insist you acquit him". [7] In rebuttal, after arguing that the "People believe that the only injustice would be if you do not do your job", the prosecutor again indicated that if he hadn't met his burden, the jury "knew what to do". Nowhere in his opening or closing remarks did the prosecutor tell the jury that they had a duty to find petitioner guilty. All of the prosecutor's remarks were made while discussing the evidence and the prosecutor consistently advised the jury that the burden of proof was his and the jury should acquit if he had no met that burden. The prosecutor's remarks here did not amount to misconduct.

---

[7] T. II, p. 104.

b.   **Variance between the prosecutor's opening statement and the facts at trial.**

Petitioner next alleges that the prosecutor committed misconduct because during opening arguments, the prosecutor indicated that the victim and petitioner fought every night. The evidence at trial established that the two may have fought on two occasions.

Not every variance between the advanced description of the prosecutor in the opening statement of the summary of the testimony that he or she expects to introduce and the actual presentation constitutes reversible error, when a proper limiting instruction is given. *Frazier v. Cupp*, 394 U.S. 731, 736 (1969).

In the present case, the prosecutor's brief remark about the victim and petitioner fighting every night was not so substantial as to infect the entire trial, particularly where the prosecutor told the jury that his comments were not evidence and they were only to consider the sworn testimony of the witnesses as evidence, and the trial court later instructed the jury that they were the sole judges of the facts. *See Fell v. Rafferty*, 736 F. Supp. 623, 633 (D.N.J. 1990).

c.   **Denigrating Defense Counsel.**

Petitioner next contends that the prosecutor denigrated defense counsel in his opening statement with the following comment:

> Now don't get side tracked by—by—I suppose brilliance. I'm kind of a meat and potatoes prosecutor. I let the facts do most of the talking. Don't get side tracked by rhetoric. The defense attorney's very good. Remember the facts. Keep them in the forefront of your minds at all times for that's your job. Do not get moved aside from that. The evidence is what's

17

controlling, not rhetoric. [8]

It is improper for an attorney to make "unfounded and inflammatory attacks" on opposing counsel. *United States v. Young*, 470 U.S. at 9.  A prosecutor should refrain from attacking the integrity and ethical standards of defense counsel. *United States v. Pungitore*, 910 F. 2d 1084, 1142 (3rd Cir. 1990).

In the present case, the prosecutor's brief reference to defense counsel in his opening statement was not inflammatory nor did it attack defense counsel's integrity and ethics.  Even if the comment about rhetoric could be construed as an attack on defense counsel, it would not rise to the level of a constitutional violation.  *See Harich v. Wainwright*, 813 F. 2d 1082, 1094 (11th Cir. 1987)(prosecutor comments that defense lawyers, as a class, were not to be trusted because they abuse discovery practices and learn to win cases by confusing juries did not render trial fundamentally unfair).  The comments in the present case were far less egregrious than the ones that passed constitutional muster in *Harich*.

      **d.**    **The prosecutor argued facts not introduced into evidence.**

          **i.**    **The prosecutor improperly argued that petitioner committed this crime because "If I can't have you, no one else is going to."**

During closing argument, the prosecutor argued that petitioner committed this crime because: "If I can't have you no one else is going to." [9]  Petitioner contends that this

---

[8] T. I,  p. 216.

[9] T. II, p. 99.

statement was improper because this was not a statement ever attributed to petitioner by any witnesses. As a related argument, petitioner claims that it was improper to argue that petitioner killed the victim because they had broken up, because the only evidence offered in support of this was inadmissible hearsay evidence.

A prosecutor has broad latitude in the inferences it may reasonably suggest to the jury during summation. *United States v. Rahman*, 189 F. 3d 88, 140 (2nd Cir. 1999). In the present case, there was some evidence presented that the victim and petitioner may have broken up prior to the shooting. The prosecutor's comment does not entitle petitioner to habeas relief because the jury was free to accept or reject this inference depending upon all the evidence. *Howard v. Gavin*, 844 F. Supp. 173, 176 (S.D.N.Y. 1994). Moreover, even if the prosecutor's remark about petitioner's reason for shooting the victim may have been overzealous, this alone would not entitle petitioner to habeas relief. *See Lundy v. Campbell*, 888 F. 2d 467, 477-478 (6th Cir. 1989)(prosecutor's overzealous comments in support of inadmissible evidence of petitioner's violent character did not deny petitioner a fair trial).

### ii. The prosecutor improperly argued that the witness saw the victim take her "last breath".

Petitioner also contends that it was improper for the prosecutor to argue at the close of his rebuttal that Tanya Davis "saw her sister in her last breath". Petitioner argues that there was no evidence presented that Davis saw her sister take her last breath and that the sole purpose of this remark was to evoke sympathy for the victim.

A broad range of rhetorical devices are allowed in closing arguments without

19

requiring reversal in federal habeas review. *Leslie v. Artuz*, 72 F. Supp. 2d 267, 278 (S.D.N.Y. 1999). In the present case, the prosecutor's speculation about what the victim's sister may have seen were reasonable possible inferences based upon the evidence, because Tanya Davis discovered her sister's body right after the shooting. Moreover, the trial court instructed the jury that they must not allow sympathy to enter into their deliberations. [10] Under the circumstances, this Court concludes that no prosecutorial misconduct occurred. *See Moore v. Gibson*, 195 F. 3d 1152, 1172-1173 (10th Cir. 1999).

### iii.    Mischaracterized the testimony of the witnesses.

Petitioner also claims that the prosecutor mischaracterized the testimony of Ms. Berryhill by arguing that she had testified to seeing petitioner walking in the hallway of the courthouse with "a hitch", when Berryhill, in fact, never used the term "hitch" to describe petitioner's limp and never indicated that she actually saw petitioner limping inside of the courthouse. This Court agrees with respondent that the variance between the words "hitch" and "limp" are not so different so as to render petitioner's trial fundamentally unfair.

### e.    Improper vouching for witnesses.

Petitioner next contends that the prosecutor impermissibly vouched for Tanya Davis and also suggested that petitioner and his witness had a reason to lie without offering any evidentiary support.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses because such personal assurances of guilt

---

[10] T. III, p. 5.

or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof. " *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999)(citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* A prosecutor may use summation to argue the merits and thesis of the case, including the right to discuss the motives and credibility of any witnesses. *Jackson v. Lacy*, 74 F. Supp. 2d 173, 179-180 (N.D.N.Y. 1999). The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F. 2d 1277, 1283 (6th Cir. 1987).

In reviewing the prosecutor's comments in the context of the entire closing argument, the statements made by the prosecutor did not amount to improper vouching. Petitioner asks the Court to review the complained of statements in isolation. However, in reviewing the prosecutor's closing argument in its entirety, the prosecution did not impermissibly vouch for the witnesses. Throughout his closing argument, the prosecutor referred to Tanya Davis's testimony and how it related to the other evidence. [11] There is nothing in the prosecution's argument that would suggest to a jury that he was indicating a personal belief in the veracity of Tanya Davis.

Petitioner also claims that the prosecutor in rebuttal argued to the jury that petitioner and his alibi witness had a reason to lie without supporting this with any

---

[11] T. II, pp. 100-102, 121.

21

evidence. However, petitioner chooses to quote only one line from the prosecutor's argument. In its entirety, the prosecutor pointed to the missing details between the testimony of petitioner and his alibi witness and also pointed to the fact that the two were long time friends. [12]

The prosecutor's statements did not amount to an expression of his personal belief in the veracity of Tanya Davis or petitioner's guilt.

### f.     Questioning petitioner about whether he carried a gun.

Petitioner next contends that it was improper for the prosecutor to ask petitioner about whether he carried a gun because no evidence had been presented that he carried a firearm and thus, the prosecutor was trying to inject prejudicial "bad acts" evidence to get the jury to convict petitioner because he was a bad person.

Evidence of the prior possession of a weapon can be used to prove identify and identification even where the weapon cannot be directly identified as the weapon used in the crime. *United States v. Covelli*, 738 F. 2d 847, 855-856 (7th Cir. 1984)(internal citations omitted). Because the identity of the assailant was at issue here, it was not improper for the prosecutor to question petitioner about whether or not he owned a gun, particularly where Tanya Davis testified that she had seen petitioner put an object into his pocket as he was walking away from the house after the shooting.

### g.     The prosecution improperly asked petitioner to comment on the truthfulness of Tanya Davis.

As his final claim of misconduct, petitioner claims that it was improper for the

---

[12] T. II, p. 121.

prosecutor to ask petitioner whether Tanya Davis was lying when she testified that he walked with a limp because he testified that he did not walk with a limp.

Counsel in a criminal case should not ask a witness to comment on the veracity of the testimony of another witness. *United States v. Sullivan*, 85 F. 3d 743, 749-750 (1st Cir. 1996). However, what happened in this case was not an attempt by the prosecutor to procure petitioner's opinion as to Davis' veracity. Instead, the questions sought to point out the contradiction in petitioner's testimony for the purpose of bringing the contradiction between his testimony and Davis's testimony to his attention and the attention of the jury. *See D'Aquino v. United States*, 192 F. 2d 338, 369 (9th Cir. 1951)(holding that it was not error in a treason prosecution for the prosecution to cross-examine the defendant to ask if a certain government witness whose testimony differed from that of the defendant in certain matters was in error). Because the questions to petitioner about whether Davis was lying were isolated references and were directed to contradictions between the testimony of Davis and petitioner, no prejudice occurred. *See Jenner v. Class*, 79 F. 3d 736, 741 (8th Cir. 1996)(rejecting this allegation as part of an ineffective assistance of counsel claim).

### 3. Conclusion

Petitioner has failed to show that he was deprived of a fair trial as a result of prosecutorial misconduct. His third claim is without merit.

### D. Claim # 4. The admission of a photograph showing blood on the stairway of the victim's apartment does not entitle petitioner to relief.

Petitioner next contends that the trial court erred in admitting a photograph showing

23

blood in the hallway where the victim had been shot.

Habeas review does not encompass state court rulings on the admission of evidence unless there is a federal constitutional violation. *Clemmons v. Sowders*, 34 F. 3d 352, 357 (6th Cir. 1994); *Fuson v. Jago*, 773 F. 2d 55, 59 (6th Cir. 1985). Only where the erroneous application of state law deprives a petitioner of a fundamental constitutional guarantee will a federal court inquire into the state court rulings. *Donnelly v. De Christoforo*, 416 U.S. 637, 642-643 (1974); *Fuson v. Jago*, 773 F. 2d at 59.

In the present case, petitioner contends that admission of a photograph showing a large amount of blood on the stairs in the victim's apartment was unduly prejudicial and deprived him of a fair trial. Similar challenges involving far more gruesome photographs than the ones introduced in petitioner's case have been rejected. *See Wiley v. Puckett*, 969 F. 2d 86, 105 (5th Cir. 1992)(photographs of murder victim's body lying in a pool of blood following a shooting and his surviving daughter's blood not so prejudicial so as to render murder defendant's trial fundamentally unfair); *United States v. De Parias*, 805 F. 2d 1447, 1453 (11th Cir. 1986)(photographs of a murder victim's badly decomposed body held admissible); *Dennis v. Mitchell*, 68 F. Supp. 2d 863, 892-893 (N.D. Ohio 1999)(admission of photographs showing murder victim's body and shotgun wound to head did not make defendant's trial unfair); *Goins v. Angelone*, 52 F. Supp. 2d 638, 677 (E.D. Va. 1999)(admission of sixty five photographs of five murder victims and the crime scene not so inflammatory as to render capital murder trial defective).

This Court concludes that admission of the photograph showing blood on the stairs was not so inflammatory as to deprive petitioner of a fair trial. The photograph did not

show the victim's body or any wounds to the body or any body parts. Petitioner's fourth claim fails to state a claim upon which relief can be granted.

## E.    Claim # 5. The evidence was legally sufficient to convict petitioner.

Petitioner next challenges the sufficiency of the evidence to convict him.

The Due Process clause of the 14th Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). The appropriate standard of review in a federal habeas corpus proceeding involving a claim of insufficiency of evidence in a state criminal conviction is whether, after reviewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime had been proven beyond a reasonable doubt. *Warren v. Smith*, 161 F. 3d 358, 360-361 (6th Cir. 1998). The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Kines v. Godinez*, 7 F. 3d 674, 678 (7th Cir. 1993). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). The jury's resolution of questions of credibility and demeanor is entitled to special deference. *Brown v. Davis*, 752 F. 2d 1142, 1147 (6th Cir. 1985).

In his sufficiency of evidence claim, petitioner asks this Court to find the evidence insufficient to convict him largely because of the inconsistencies in the testimony of Tanya Davis. A habeas corpus court cannot substitute its own evaluation of the evidence for the jury's, even in cases where it might be inclined to differ. *Aaron v. Kelly*, 65 F. Supp. 2d

25

183, 186 (S.D.N.Y. 1999).  In examining a claim of insufficiency of evidence in habeas corpus, a federal court must presume that the jury's findings in evaluating the credibility of the witnesses is correct and may ignore the testimony only when it finds it to be inherently incredible. *Switzer v. Hannigan*, 45 F. Supp. 2d 873, 877 (D. Kan. 1999).  Such a finding may be made only where the testimony is 'unbelievable on its face'; i.e. testimony as to facts that the witness physically could not possibly have observed or events that could not have occurred under the laws of nature. *Id.*

Although Davis' testimony was inconsistent in several respects, this Court concludes that her testimony concerning the events as they occurred was not "inherently incredible".  The jury heard Davis' testimony and chose to believe her version of events. This Court is not free to reweigh the credibility of the witnesses on habeas review. Because Davis positively identified petitioner as being the shooter, based upon her past acquaintance with petitioner, a rational trier of fact could have found petitioner guilty of this offense.  Petitioner's fifth claim must fail also.

## F.    Claim # 6. Petitioner was not deprived of the effective assistance of counsel.

Petitioner lastly alleges that he was deprived of the effective assistance of trial counsel.

Petitioner first alleges that his trial attorney was ineffective for failing to object to the prosecutorial misconduct which petitioner claims occurred in this case.  Because this Court concludes that the prosecutor's remarks did not prejudice petitioner so as to deprive him of a fair trial, Issue III, *supra;* petitioner's claim that counsel rendered ineffective assistance of counsel by failing to object to the prosecutor's remarks must also be

26

rejected. *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998).

Petitioner also claims that his trial attorney was ineffective for failing to object to the juror's question about whether Tanya Davis had seen the petitioner and the victim fighting in the past because the question called for evidence whose probative value was far outweighed by its prejudicial effect. In *Buehl v. Vaughn*, 166 F. 3d 163, 175-176 (3rd Cir. 1999), a habeas petitioner brought a similar claim of ineffective assistance of counsel. The Third Circuit ruled that trial counsel's failure to object to the introduction of certain "other crimes" evidence that was neither extensive or detailed did not constitute ineffective assistance of counsel where the failure to object could have been reasonable trial strategy, and defendant could not demonstrate prejudice, since the testimony was only a small part of the inculpatory evidence presented; thus, no reasonable probability existed that the result of the trial would have been different had the evidence been excluded.

In this case, Tanya Davis' testimony that she had seen petitioner and the victim fight twice in the past was neither extensive or detailed. Because this testimony was only a small part of the inculpatory evidence presented, petitioner is unable to show a reasonable probability that the result of the trial would have been different had this evidence been excluded. Petitioner's last claim must fail also.

## IV.    ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**


_____
HON. DENISE PAGE HOOD
UNITED STATES DISTRICT COURT

DATED: SEP 29 2000


PURSUANT TO RULE 77(D), FRCivP
COPIES HAVE BEEN MAILED TO ALL
ATTORNEYS FOR ALL PARTIES ON
SEP 29 2000

DEPUTY CLERK